IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD CIEUTAT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:23-00369-KD-N |
| | ) | |
| GREG LINDBERG, *et al.*, | ) | |
| Defendants. | ) | |

### REPORT & RECOMMENDATIONS

This action is before the Court[1] on Plaintiff Ronald J. Cieutat's motion to remand the above-styled civil action to the Circuit Court of Mobile County, Alabama (Doc. 20), which has been fully briefed. (Docs. 32, 34). Upon consideration and for the reasons stated herein, the undersigned **RECOMMENDS** the motion be **GRANTED**.

## I.  *Background*

Cieutat, as representative and on behalf of each seller under an Equity Purchase Agreement ("EPA") dated January 19, 2018, initiated an action in the Circuit Court of Mobile County, Alabama ("Circuit Court") on August 22, 2023. (Doc. 1-4, PageID.37-55).[2] The underlying factual allegations stem from the execution of this EPA, which provided for the sale of nine corporate entities (hereinafter, the "acquired

---

1 Plaintiff's motion was filed prior to reassignment to United States District Judge Kristi K. DuBose. (*See* Docs. 20, 23). Judge DuBose subsequently referred briefing of this matter to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (11/3/2023, 11/9/2023 elec. refs.).

2 At all times relevant, Cieutat has been acting in his capacity as sellers' representative under the EPA, which was included alongside the initial complaint. (*See* Doc. 1-4). References herein to "Ciuetat" or "Plaintiff" are intended to convey his role in this capacity.

1

entities")[3] to Defendant HPCSP Investments, LLC ("HPCSP Investments"). (Doc. 1-4, PageID.56-152). The EPA lists Defendant Greg Lindberg as manager of HPCSP Investments. (*Id.*). The sale of the acquired entities to HPCSP Investments closed April 13, 2018. (*Id.*). As part of the consideration for the sellers' interests in the acquired entities, the sellers, HPCSP Investments and Lindberg entered into an Equity Equivalence Agreement ("EEA"). (Doc. 1-4, PageID.38-54, 154-64).[4] The terms of the EEA granted the sellers an equitable interest in HPCSP Investments, initially valued at 25% of the company. (*Id.*). Relevant here, the EEA gave Cieutat a put right that would ripen as of April 13, 2023. (*Id.*). If and when this put right was exercised, it would begin the process for the sellers to redeem their equity in HPCSP Investments. (*Id*). Also relevant here, in the event of a sale of HPCSP Investments, the EEA provides terms for redemption of the sellers' interest in the form of a "Transfer of Control Payment." (*Id.*). Lindberg signed this agreement both in his capacity as manager of HPCSP Investments and as Guarantor. (*Id.*).

On April 29, 2022, Cieutat wrote Eli Global, LLC ("Eli Global"), Lindberg, Peter Nordberg and Michael Pereira, requesting information regarding any sale or potential sale of HPCSP Investments. (Doc. 1-4, PageID.38-54, 166). He received no response. (Doc. 1-4, PageID.39). About a year later, Cieutat's put right ripened and he exercised it by letter dated April 14, 2023 sent to Eli Global, Lindberg, Nordberg

---

3 The "acquired entities" are: HPC, LLC, Hemophilia Preferred Care of Memphis, Inc., HPC Biologicals, Inc., HPCNP, Inc., HPC Specialty Rx West Virginia, Inc., HPC Specialty Rx of Kansas, Inc., Hemophilia Preferred Care of Oklahoma, Inc., HPC Specialty Rx Reed, Inc., and Hemophilia Preferred Care of Mississippi, Inc. (Doc. 1-4, PageID.64).

4 A copy of the EEA is also included alongside the complaint. (Doc. 1-4, PageID.154-64).

2

and Pereira. (Doc. 1-4, PageID.38-54, 168-73). Pereira wrote Cieutat in response on June 14, 2023, explaining HPCSP Investments' sole member, HPCSP Holdings, LLC ("HPCSP Holdings"), was conveyed to the HPCSP Trust on June 3, 2021 via a "Trust Agreement and Transfer and Consent Agreement," and that this prior sale terminated Cieutat's put right under the EEA. (Doc. 1-4, PageID.38-54, 175-267). According to the letter, the sale resulted in negative proceeds, such that the Transfer of Control Payment owed to Cieutat was $0. (*Id.*). Included with Pereira's letter were several documents related to the conveyance of HPCSP Holdings to the HPCSP Trust, including: (1) a "Seventh Amended and Restated Operating Agreement of HPCSP Investments, LLC" effective June 3, 2021, which identifies HPCSP Holdings as HPCSP Investments' sole member, (2) the Transfer and Consent Agreement, under which HPCSP Grantor, LLC ("HPCSP Grantor") purports to transfer 100% of its interest in HPCSP Holdings to the HPCSP Trust, in exchange for (3) a $95,000,000 promissory note issued by the HPCSP Trust to HPCSP Grantor, and (4) the Trust Agreement between HPCSP Grantor (as Grantor) and Hugh Steven Wilson (as Trustee of the HPCSP Trust). (*Id.*). Of note, Lindberg is a signatory on the Trust Agreement as manager of HPCSP Grantor, on the Transfer and Consent Agreement as manager of both HPCSP Grantor and HPCSP Holdings, and on the promissory note as manager of HPCSP Grantor. (*Id.*).

Cieutat contends the transfers of the sellers' interests in HPCSP Investments were not done in accordance with the terms of the EPA/EEA, that one of two things happened in doing so, and that HPCSP Investments and Lindberg owe Cieutat a

3

"substantial sum of money" either way. (Doc. 1-4, PageID.38-54). First, Cieutat proffers there was no transfer of HPCSP Investments and that the above-noted conveyances do not constitute a "sale" under the terms of the EPA/EEA, therefore his put right should have been honored, and HPCSP Investments and Lindberg are in breach of the EEA by failing to do so. (*Id*.). Second, if these transfers were a "sale" under the EPA/EEA, Cieutat contends he is entitled to the Transfer of Control Payment (specifically, 25% of the value of the $95,000,000 promissory note), and that HPCSP Investments and Lindberg are in breach of the EEA by failing to make this payment. (*Id*). Further, Cieutat maintains the above-noted conveyances were fraudulent in any event and alleges they were made intentionally in order to avoid collection. (*Id*.).

The initial complaint filed August 22, 2023 asserted causes of action for specific performance, breach of contract, fraudulent transfer (under Ala. Code § 8-9A-1 *et seq*.), conspiracy to defraud, fraudulent and voidable transfer (under Ala. Code §§ 8-9A-1 *et seq*., and 8-9B-1 *et seq*.), for declaratory judgment, and sought equitable and injunctive relief. (Doc. 1-4, PageID.37-55). Each was brought against varying groups of seven named defendants – Lindberg, HPCSP Investments, Wilson (both individually and as Trustee of the HPCSP Trust), HPCSP Grantor, HPCSP Holdings, Eli Global, and Global Growth Holdings, Inc. (formerly known as Academy Association, Inc.) – and a group of fictitious parties described as "persons or entities which have received and/or transferred assets of Eli Global, LLC and/or Greg Lindberg subject to the Fraudulent/Voidable Transfer Act." (*Id*.). Motions for a

4

temporary restraining order ("TRO") and for a preliminary injunction were filed with the complaint. (Doc. 1-4, PageID.30, 323-42).

On August 23,[5] the Circuit Court entered a TRO and set a preliminary injunction hearing for August 31. (Doc. 1-4, PageID.343-45). Cieutat filed the operative first amended complaint ("FAC") on August 30, fully incorporating his initial complaint, adding a Count 8 (Alter Ego/Pierce the Corporate Veil) and adding six new named defendants – HPC, LLC ("HPC"), Hemophilia Preferred Care of Memphis, Inc. ("HPCM"), HPC Biologicals, LLC ("HPCB"), Apex International, LLC, Northern Air, LLC and 633 Days, LLC – along with a second group of fictitious parties described as "persons or entities which have been operated as an instrumentality and or alter ego of Greg Lindberg and/or Eli Global, LLC." (Doc. 1-4, PageID.365-69). The preliminary injunction hearing was held August 31, and the Circuit Court subsequently granted Cieutat's motion for injunctive relief by order dated September 1. (Doc. 1-4, PageID.382-90). The order specifically found notice was adequately provided to defendants and/or their counsel pursuant to Ala. R. Civ. P. 65(a)(1),[6] and that they failed to appear. (*Id.*). In its order, the Circuit Court determined Cieutat would suffer irreparable harm if the requested relief was not granted and that he was entitled to the same after showing a reasonable success of likelihood on the merits. (*Id.*). Specifically, the Circuit Court's order entered a preliminary injunction…

> … prohibiting any Defendant from selling, conveying, assigning or transferring HPCSP Investments, LLC, or selling, conveying, assigning

---

[5] All dates from this point forward are the year 2023, unless otherwise noted.

[6] Pursuant to Ala. R. Civ. P. 65(a)(1), "[n]o preliminary injunction shall be issued without notice to the adverse party."

5

> or transferring any entity owned by HPCSP Investments, LLC or selling, conveying, assigning or transferring any entity that owns HPCSP Investments, LLC, whether such ownership is direct or indirect, until the conclusion of this matter, and… prohibiting any Defendant from making any distributions or payments from HPCSP Investments, LLC or any distributions or payments from any entity owned by HPCSP Investments, LLC to any owners of HPCSP Investments, LLC, whether such ownership is direct or indirect, until the conclusion of this matter. HPCSP Investments, LLC and its subsidiaries may continue to operate in a normal course of business of a specialty pharmacy, but are otherwise further prohibited from distributing money or assets or making payments, for the benefit of any third party, including but not limited to, for the benefit of Defendant Greg Lindberg.

(Doc. 1-4, PageID.388).

On September 27, Defendants removed the action to this Court, purporting to do so on diversity jurisdiction grounds, 28 U.S.C. § 1332(a), pursuant to 28 U.S.C. §§ 1441, 1446. (Doc. 1). In the notice of removal, Defendants averred complete diversity existed "among all properly joined parties." (*Id.*). The notice asserts that HPC, HPCM and HPCB are Alabama citizens that were fraudulently joined to defeat diversity and urged the Court to disregard their citizenships and deem the removal proper. (*Id.*). Plaintiff contends their joinder was not fraudulent and filed the operative motion to remand on October 13, which has been fully briefed and is ripe for disposition. (Docs. 20, 22, 32, 34).

## II.  *Legal Standards*

Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to certain justiciable "Cases" and "Controversies." U.S. Const. art. III, § 2. Among them, federal district courts are statutorily authorized to adjudicate "civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interests and costs, and is between… citizens of different states." 28 U.S.C. § 1332(a). However, "[d]iversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted). The key fact that must be alleged for diversity jurisdiction purposes is citizenship, not residence. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[T]he citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members") (citations omitted)). If an action satisfying the criteria for diversity jurisdiction is originally brought in a state court, it may be removable to federal court under 28 U.S.C. § 1441(b); however, removal is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," i.e., if diversity of citizenship is lacking. 28 U.S.C. § 1441(b)(2). The removing party bears the burden of establishing jurisdiction. *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012). Further, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly… [i]ndeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

Relevant here is the judicially created doctrine of fraudulent joinder, which provides an exception to the requirement of complete diversity and permits some actions to be removable even if complete diversity is lacking. *Triggs*, 154 F.3d at 1287.

The Eleventh Circuit recognizes this doctrine's applicability in three circumstances: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant," (2) "when there is outright fraud in the plaintiff's pleading of jurisdiction facts," or (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id*.

In determining whether a case should be remanded, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113, F.3d 1536, 1538 (11th Cir. 1997). *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (explaining how the applicable standard accepts factual allegations as true and draws inferences in plaintiff's favor like a Fed. R. Civ. P. 12(b)(6) motion but requires only "possibility" as opposed to "plausibility"). Moreover, "determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). If it is found that a non-diverse defendant was fraudulently joined, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Crowe*, 113 F.3d at 1538. In such cases, the federal court may appropriately assert removal diversity jurisdiction over the case. *Henderson v. Wash.*

*Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The burden of a removing party to prove fraudulent joinder "is a heavy one" and must satisfy the district court by clear and convincing evidence. *Stillwell*, 663 F.3d at 1332; *Crowe*, 113 F.3d at 1538.

## III. *Analysis*

At issue here is whether defendants HPC, HPCM and HPCB have been fraudulently joined. (*See* Doc. 1). Plaintiff's motion to remand contends joinder was proper and brings this issue squarely before the Court. (Doc. 20).

### A. Initial Matters

Three initial points need be addressed before proceeding to the fraudulent joinder analysis. First, there is no dispute that Plaintiff, HPCM and HPCB are all Alabama citizens for diversity purposes or that the amount in controversy is satisfied. (Docs. 1, 1-4, 17, 20, 32, 34). Defendants alleged HPC's joinder was also fraudulent in their notice of removal, but now contend it is a diverse party. (Docs. 1, 31, 32). Plaintiff disagrees. (Doc. 34). However, because complete diversity is necessary, the undersigned begins with the allegedly fraudulent joinder of HPCM and HPCB – if either has been properly joined, complete diversity is lacking and HPC's citizenship is a non-factor for current purposes. Further, because the citizenships of Plaintiff, HBCM and HBCB are undisputedly not diverse, remand is the proper course unless Defendants establish their joinder was fraudulent. *Univ. of S. Ala.*, 168 F.3d at 411.

Second, Defendants' opposition response purports to incorporate arguments "detailed in the Notice of Removal and in subsequent Motions to Dismiss submitted by the Defendants and HPC, LLC." (Doc. 32 (citing Docs. 1, 7, 8, 9, 13, 15, 27)). The

9

undersigned will consider arguments raised in the notice of removal, as they are central to the fraudulent joinder analysis, but declines to consider the motions to dismiss. Although "affidavits and deposition transcripts" in support of removal or remand may be considered on a motion to remand, *see De Perez*, 139 F.3d at 1380, Defendants have not cited, nor has the undersigned located, any authority to suggest incorporation of arguments made in Defendants' motions to dismiss could be properly considered here. Putting aside that motions to dismiss are neither affidavits nor deposition transcripts, caselaw suggests consideration of any materials extrinsic to pleadings at the time of removal is limited to "summary-judgment type evidence." *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. Unit A. Dec. 1981)); *Edenfield v. Hiscox, Inc.*, 644 F. Supp. 3d 1372, 1379-80 (S.D. Ga. Nov. 22, 2022) (declining to consider unsworn and unverified certificate of insurance in opposition to motion to remand). Arguments made in a motion to dismiss are not evidence at all, let alone "summary-judgment type evidence." *See Burden*, 60 F.3d at 217, n.18.

If this were not enough, the attempt at incorporation is also improper under this Court's local rules, as Plaintiff points out. (*See* Doc. 34). Under S.D. Ala. Civ. LR 7(e), response briefs are limited to 15-pages, and this Court has previously taken the position that attempts to incorporate section(s) of another brief count against the page limits established by local rule. *See FNB Bank v. Park Nat'l Corp.*, 2013 U.S. Dist. LEXIS 180657, *1, n.1 (S.D. Ala. Dec. 27, 2013) (declining to consider materials incorporated by reference in contradiction of local rule). Allowing defendants to

incorporate their other briefs here would far exceed this 15-page limit. Moreover, the undersigned specifically noted in setting briefing on the motion to remand that "no other briefing or submissions addressing the subject motions may be filed without leave of the Court for good cause shown." (Doc. 22, PageID.608). While some of the motions sought to be incorporated were filed prior to entry of this directive, leave of Court has not been extended, and the attempt to incorporate additional briefing by reference violates the spirit of the Court's directive at a minimum. In short, the undersigned takes the position previously articulated by this Court: such a tactic "is improper and foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced while permitting the movant to circumvent this Court's page limit." *FNB Bank*, 2013 U.S. Dist. LEXIS 180657 at n.1 (citation omitted). Accordingly, the motions to dismiss that Defendants purport to incorporate into their opposition to the motion to remand are not before the Court and will not be considered in resolving the instant matter.

Third, the undersigned notes the parties have spilled substantial ink seeking to litigate whether the Circuit Court's entry of a preliminary injunction – which necessarily includes a finding of "a reasonable likelihood of success on the merits"[7] –

---

7 Under Alabama law, "[a] preliminary injunction should be issued only when the party seeking an injunction demonstrates:

> (1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].

*State ex rel. Marshall v. TY Green's Massage Therapy, Inc.*, 332 So. 3d 413, 416 (Ala. 2021) (citations omitted) (alterations in original).

11

has any dispositive effect with respect to the analysis under the first *Triggs* prong. Plaintiff argues he can clearly state a possible cause of action against HPCB and HPCM because he "has already proved and received relief against" them by way of the Circuit Court's preliminary injunction. (Doc. 20). Defendants argue reliance on the preliminary injunction order is improper by debating whether HPCM and HPCB were even parties to that order – a contention which appears to be plainly contradicted by the order itself. (Doc. 32). (*See* Doc. 1-4, PageID.382-90 (awarding injunctive relief against "any Defendant" and ordering the Clerk to serve a copy of the order upon all defendants, including HPCM and HPCB)).

Upon removal, "the federal court takes the case up where the State court left off," *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436 (1974), and the Circuit Court's preliminary injunction "remains in full force and effect" at this time pursuant to 18 U.S.C. § 1450, as no party has sought modification or dissolution of it, much less been granted relief by this Court. Of course, this Court is free to modify the order to comport with now-applicable federal standards. *Granny Goose Foods*, 415 U.S. at 437 ("[F]ederal rather than state law governs the future course of proceedings [after removal], notwithstanding state court orders issue prior to removal"); *Jackson v. American Sav. Mortgage Corp.*, 924 F.2d 195, 198 (11th Cir. 1991) ("After removal, state court proceedings are treated as those of the district court, *Savell v. Southern Ry.*, 93 F.2d 377, 379 (5th Cir. 1937), and the district court naturally is able to reexamine its own proceedings.").[8] Moreover, this Court has no

---

[8] To be clear, no party has sought modification or dissolution of the preliminary injunction order, and the undersigned offers no recommendation with respect to that order's compatibility with the

12

obligation to give deference to the findings underlying the Circuit Court's order. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303-04 (5th Cir. 1988) (citing *Granny Goose Foods*, 415 U.S. at 438-41) (explaining 28 U.S.C. § 1450 "mandates no predetermined level of deference which a federal court must observe in reconsidering an interlocutory state court order."). Although, a district court does not abuse its discretion by allowing a state court order "to stand on the basis of the record developed by the state court." *Nissho-Iwai American Corp.*, 845 F.2d at 1303.

Neither party cites any caselaw on point to support their respective positions, and the undersigned is not aware of any authority indicating a pre-removal state court injunction is some sort of silver bullet to defeat an allegation of fraudulent joinder. However, given that Plaintiff is afforded inferences at this stage (both factually and as to state substantive law), the lessened "possibility" standard applicable under the fraudulent joinder analysis and the Eleventh Circuit's directive that any doubts be resolved in favor remand, the undersigned views the Circuit Court's preliminary injunction as providing persuasive support for Plaintiff under the first *Triggs* prong. *Univ. of S. Ala.*, 168 F.3d at 411; *Stillwell*, 663 F.3d at 1332.

**B. Fraudulent Joinder**

With those preliminary matters resolved and noted, the undersigned turns to the operative motion to remand. Because the citizenships of Plaintiff, HPCM and HPCB are undisputedly not diverse, *see* III(A), *supra.*, and because "all doubts about jurisdiction should be resolved in favor of remand," the proper course here will be

---

applicable federal standards.

remand unless defendants satisfy their heavy burden of establishing that the joinder of HPCM and HPCB was fraudulent. *Univ. of S. Ala.*, 168 F.3d at 411; *Stillwell*, 663 F.3d at 1332. Both parties correctly point to *Triggs* as the applicable framework, and the focus here is on the first and third prongs.

Under the first *Triggs* prong, joinder may be fraudulent "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." 154 F.3d at 1287. As applied here, this inquiry is whether it is possible the state court could find that Cieutat states a cause of action against HPCM and/or HPCB. *Triggs* instructs: "[i]f there is <u>even a possibility</u> that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." *Id.* (emphasis in original). "In other words, a claim for fraudulent joinder only succeeds 'if there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendant under the facts alleged…'" *Miller v. R.J. Reynolds Tobacco Co.*, 502 F. Supp. 2d 1265, 1269 (S.D. Fla. Aug. 17, 2007) (citing *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979)). Under the third *Triggs* prong, joinder may be fraudulent when "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternatively liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." 154 F.3d at 1287. Here, that inquiry is whether: (1) there is joint, several or alternative liability among HPCM, HPCB and the diverse

14

defendants and (2) whether the claims asserted against the diverse defendants have a "real connection" to the claims against HPCM and HPCB.

Defendants contend they satisfy both prongs for two primary reasons: (1) Plaintiff's Count 8 (Alter Ego/Pierce the Corporate Veil) – one of the three counts in which HPCM and HPCB are implicated (the others being Count 4's conspiracy to defraud claim, discussed *infra.*, and Count 7's request for injunctive and equitable relief, discussed *supra.*) – is not a standalone cause of action, but rather a theory of liability, such that it is not a "cause of action" for purposes of the first prong of the *Triggs* analysis; and (2) Plaintiff's conspiracy to defraud allegations in Count 4 are merely conclusory and do not sufficiently implicate HPCM and/or HPCB in any alleged conspiracy, such that it fails to state a possible claim under the first *Triggs* prong; therefore, according to Defendants, there is also no "real connection" between these defendants and the non-diverse Defendants and no possibility of joint, several or alternatively liability under the third *Triggs* prong. The undersigned finds both reasons unpersuasive.

With respect to Defendants' first argument, they are correct insofar that a claim based on an alter ego theory is not a distinct cause of action under Alabama law. (Doc. 32). *Ex parte Thorn*, 788 So. 2d 140, 145 (Ala. 2000). *See Anantharaju v. Gastrointestinal Specialists, P.C.*, 2022 U.S. Dist. LEXIS 105942, *38 (N.D. Ala. June 14, 2022) (collecting cases). As explained in *Ryals v. Lathan Co.*:

> A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather is procedural. A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a

15

> cause of action that otherwise would have existed only against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action such as a tort or breach of contract. It has been said that the alter ego doctrine is thus remedial, not defensive, in nature. One who seeks to disregard the corporate veil must show that the corporate form has been abused to the injury of a third party.

77 So. 3d 1175, 1179 (citing Fletcher, Cyclopedia Corporations § 41.10 (1990)). However, Defendants stretch this point of law to mean that Count 8 categorically cannot be considered a "cause of action" for purposes of a *Triggs* analysis. (Docs. 1, 32). The undersigned is not persuaded, and defendants point to no authority indicating otherwise. Plaintiff argues, and the undersigned agrees, that what matters here is possible liability. (Docs. 20, 34). *See Miller v. R.J. Reynolds Tobacco Co.*, 502 F. Supp. 2d at 1269 ("[A] claim for fraudulent joinder only succeeds 'if there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendant under the facts alleged...'") (citation omitted)). Plaintiff has included sufficient allegations in the FAC that the state court could conclude the corporate veil should be pierced and/or that HPCM and HPCB could be considered alter-egos of Defendants Lindberg and Eli Global. (*See* Doc. 1-4, PageID.365-68 (alleging Lindberg "ultimately controls" each of the Defendant entities, that the funds of all Defendant entities have been co-mingled for the direct, personal and/or non-corporate benefit of Lindberg and Eli Global without respect to corporate form, and that assets have been transferred at Lindberg and/or Eli Global's direction in an effort to avoid possible collection of judgment)). And if the state court so finds, then HPCM and/or HPCB could be liable for the debts of Lindberg and Eli Global.

Moreover, the undersigned is not persuaded by Defendants attempt to present Count 8 as completely divorced from Count 4, when the FAC clearly seeks to use Count 8 as a vehicle by which impose liability on HPCM and/or HPCB (and others) for their possible involvement in a conspiracy to defraud. (*See* Doc. 1-4). Count 4 alleges all Defendants "conspired to hinder, delay or defraud HPCSP Investments' and Lindberg's creditors" – i.e., Cieutat and the sellers under the EPA, which resulted in damages to them. (Doc. 1-4). And Count 8 asserts, at least in part, how that conspiracy was effectuated. (*Id*.). Defendants argue Count 4's allegations are conclusory and lack specificity, such that the FAC fails to state a claim as it relates to HPCM and HPCB. (Doc. 32). They argue there is no showing of any agreement, collaboration or preconceived plan between these HPCM and HPCB and the diverse defendants, no intent or allegation to commit an illegal act (or a legal act to accomplish an unlawful purpose), and no underlying wrong as it relates to them. (*Id*.).

A civil conspiracy, as a matter of Alabama law, "requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550 (Ala. 1993). However, "the conspiracy itself furnishes no cause of action." *Id*. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) ("The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed… [i]f the underlying cause of action is not viable, the conspiracy claim must also fail") (internal citations omitted)). Though allegations of a conspiracy require more than "bald speculation and mere conclusory assertion," *Medical Props. Trust, Inc. v. Viceroy Rsch*, 2023 U.S. Dist.

LEXIS 155241, *24 (N.D. Ala. Sep. 1, 2023) (cleaned up), "[b]y its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties[.]" *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988).

Defendants' attempt at arguing the lack of an underlying wrong lacks merit. It is clear from FAC's face that Cieutat alleges Lindberg and/or Eli Global used each of the acquired entities (including HPCM and HPCB) in a coordinated effort to defraud Plaintiff, avoid creditors and avoid the collection of judgment(s). (Doc. 1-4). The undersigned finds this allegation, especially when considered alongside Count 8, sufficiently specific that the state court could find a possible cause of action is stated for conspiracy to defraud against HPCM and/or HPCB and that those entities could be liable if the corporate veil were to be pierced. Moreover, the specific showing of an agreement, collaboration or other preconceived plan is frequently lacking in conspiracy allegations. *See Eidson*, 527 So. 2d at 1285 (citing *O'Dell v. State ex rel. Patterson*, 270 Ala. 236, 240 (1959)). This is where the circumstantial evidence comes into play, of which there is an abundance – in addition to those allegations previously noted, Lindberg was a signatory on nearly every document forming the basis of Cieutat's conspiracy to defraud allegation, it is specifically alleged the fraudulent transfers were made for the benefit of Lindberg (with at least one being specifically identified (*e.g.*, Doc. 1-4, PageID.48)), Lindberg is alleged to be the "beneficial owner" of each of acquired entities, Cieutat obtained a prior judgment of more than $10,000,000 which necessitated publication to perfect service and the purported "sale" made in contradiction of the EEA saved Lindberg approximately $15,000,000

as Guarantor. (Doc. 1-4). Taken together, the undersigned finds these facts to be sufficient that the state court could possibly find that Cieutat can state a cause of action against HPCM and HPCB, especially if they are deemed alter-egos of Lindberg.

In closing, the undersigned further finds it is unlikely that Defendants can satisfy the third *Triggs* prong, which contemplates that joinder may be fraudulent when "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternatively liability *and* where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." 154 F.3d at 1287 (emphasis supplied). As discussed, *supra.,* the "real connection" sub-prong is certainly lacking here, as HPCM and HPCB are wrapped up in the fraudulent transfers and conspiracy to defraud allegations levied by Plaintiff. Moreover, under the first *Triggs* prong, a possible cause of action exists against both defendants in Count 4, and if the allegations of Count 8 are established as well, this could very well subject these defendants to joint, several or alternative liability. As such, defendants also fail to carry their heavy burden here.

## IV. *Conclusion*

In sum, the undersigned finds that defendants have not established that joinder was fraudulent under the first prong of *Triggs*, as it appears possible that the state court could find Plaintiff could state a cause of action HPCM and HPCB for conspiracy to defraud, both with and without consideration of Count 8's alter ego/pierce the corporate veil theory of liability. And while not discussed at length, the third *Triggs* prong is also unsatisfied. Moreover, the state court's order granting a preliminary

injunction is persuasive and further bolsters the basis that the state court could find a possible cause of action has been stated.

Accordingly, upon consideration and for the reasons stated above, the undersigned **RECOMMENDS** Plaintiff's motion to remand (Doc. 20) be **GRANTED** and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 18th day of December 2023.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**